IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **DIGNA OSORIO DE ZAVALA,** *et al.*, | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **Civil Action No.: TDC-17-3093** |
| | * | |
| **TORTILLERIA EL VOLCAN, LLC,** | * | |
| *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |
| | * | |

\*\*\*\*\*

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses Plaintiffs' Motion for Default Judgment (the "Motion"). ECF No. 14. Plaintiffs Digna Osorio de Zavala ("Osorio de Zavala") and Elsa Juarez ("Juarez") (collectively "Plaintiffs") filed a complaint against Defendants Tortilleria El Volcan, LLC ("Tortilleria El Volcan"), Raul Chicas Ramos ("Chicas Ramos"), and Olga Chicas ("Chicas") (collectively "Defendants"), alleging Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq.* Pls.' Compl., ECF No. 1. Plaintiffs seek damages, including liquidated and treble damages, from Defendants. *Id.* at 8–9. Pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302, the Honorable Theodore D. Chuang referred this matter to the undersigned for the making of a Report and Recommendation concerning default judgment and/or damages. For the reasons stated herein, I recommend the Court **GRANT** Plaintiffs' Motion and award a total of $56,629.64 to be divided as follows:

1. $27,034.82 to Plaintiff Osorio de Zavala (representing two times her unpaid minimum and overtime wages);

2. $28,894.82 to Plaintiff Juarez (representing two times her unpaid minimum and overtime wages);

3. $700.00 in costs and expenses.

I further recommend that the Court **DENY WITHOUT PREJUDICE** Plaintiffs' request for attorneys' fees with instructions to include additional information as outlined below should they refile their request or, in the alternative, award Plaintiffs a total of $7,778.50 in attorneys' fees.

## II. Factual Background

On October 23, 2017, Plaintiffs commenced this action against Defendants, alleging that Defendants violated provisions of the FLSA, the MWHL, and the MWPCL. Pls.' Compl. ¶¶ 43–66. The Complaint states that Defendant Tortilleria El Volcan is "a tortilla factory located at 18068 Georgia Avenue, Olney, MD 20832." *Id.* at ¶ 10. Plaintiffs were employees at the factory where they worked mostly making tortillas by hand. *Id.* at ¶¶ 10, 13. Defendants Chicas Ramos and Chicas are owners of Defendant Tortilleria El Volcan and "exercise[] . . . control over the operations of Tortilleria El Volcan . . . including its pay practices." *Id.* at ¶¶ 8–9. At all relevant times, Defendants Chicas Ramos and Chicas had the power to hire and fire Plaintiffs, to set Plaintiffs' rate and manner of pay, controlled Plaintiffs' work schedule, and supervised and controlled Plaintiffs' work. *Id.* at ¶¶ 31–36.

Plaintiff Osorio de Zavala was employed "from approximately April 1, 2014 through approximately April 3, 2017." *Id.* at ¶ 11. Plaintiff Juarez was employed "from approximately June 21, 2013 through approximately April 3, 2017." *Id.* at ¶ 12. Throughout their employment,

Plaintiffs state that they were paid hourly rates ranging between $7.50 and $8.00.[1] *Id.* at ¶¶ 21–23. During the period in question, the minimum wage for Maryland increased and was on average more than what Defendants were paying their employees.[2] *Id.* at ¶ 27. Plaintiffs further state that they worked "typically and customarily" six (6) days a week for 8 to 12 hours a day with a one-hour break for lunch. *Id.* at ¶¶ 14–15. Despite "typically and customarily" working more than 40 hours per workweek, Plaintiffs state that they were never paid overtime wages. *Id.* at ¶¶ 16, 25. According to the Complaint, Defendants paid their workers by the hour and in cash. *Id.* at ¶¶ 19–20.

According to Plaintiffs, "[a]t all relevant times, Defendants were aware that they were legally required" to timely pay Plaintiffs the applicable minimum wage and overtime rates and failed to do so. *Id.* at ¶¶ 31–41. As a result, Plaintiff Osorio de Zavala alleged that Defendants owed her approximately $25,396.45 in minimum and overtime wages (excluding enhanced damages) and Plaintiff Juarez claimed Defendants owed her approximately $27,614.34 in minimum and overtime wages (excluding enhanced damages).[3] *Id.* at ¶¶ 29–30. Plaintiffs state that they "have had difficulty maintaining a minimum living standard" because of Defendants' failure to pay minimum and overtime wages and that "[a]t various points, [Plaintiffs] have been unable to purchase adequate food, housing, utilities, and other basic necessities." *Id.* at ¶ 42.

On November 16, 2017, Plaintiffs served Defendants Tortilleria El Volcan and Chicas Ramos with process. ECF No. 4; ECF No. 5. On March 6, 2018, Plaintiffs moved to reissue a

---

[1] Plaintiffs state that they were often paid less than these hourly rates but that these were "understood to be the 'official' rates at various points of time." Pls.' Compl. ¶ 23.

[2] The minimum wage rates under Maryland law will be set forth in Section IV.A.

[3] Although not explained in the Complaint, it appears Plaintiffs calculated these amounts based upon the minimum wage rates in Montgomery County, Maryland. Pls.' Compl. ¶¶ 28–30.

summons for Defendant Chicas and for the time to serve her to be extended. Pls.' Mot. to Reissue Summons, ECF No. 6. Judge Chuang granted that motion on May 9, 2018. Order, Chuang, J., ECF No. 7. On May 22, 2018, Plaintiffs served Defendant Chicas with process. ECF No. 9.

Because Defendants did not file an answer to Plaintiffs' Complaint, Plaintiffs moved for a default against them on June 19, 2018. ECF No. 10; s*ee* Fed. R. Civ. P. 55(a). On June 20, 2018, the Clerk entered a default against all Defendants. ECF No. 11; ECF No. 12. On December 12, 2018, Plaintiffs filed their instant Motion seeking judgment by default to be entered in their favor and against all Defendants for the sum of One Hundred and Fifty-Seven Thousand, Five Hundred and Thirty-Three Dollars and Fifty Cents ($157,533.50) to be divided as follows: (1) $73,150.50 to Plaintiff Osorio de Zavala (representing three times her unpaid minimum and overtime wages); (2) $75,040.50 to Plaintiff Juarez (representing three times her unpaid minimum and overtime wages); and (3) $9,342.50 in attorneys' fees, expenses, and costs. Pls.' Mot. 5–6.

On May 14, 2019, this Court entered an order denying Plaintiffs' Motion without prejudice. ECF No. 16. Plaintiffs were ordered to provide "supplemental information regarding the attorneys' fees and service costs requested in compliance with Appendix B of the Local Rules of the Court. This include[d], but [was] not limited to, time logs detailing the tasks completed during the hours requested." *Id.* at 1. The Court indicated that in any event, it would vacate its order and address the merits of the case after May 27, 2019. *Id.* at 2. To date, Plaintiffs have failed to submit any supplemental information regarding attorneys' fees as requested by the Court. Accordingly, the Court now **VACATES** its May 14th Order and will address the merits of Plaintiffs' Motion.

### III.    Legal Background

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments.  Rule 55(a) provides that "[w]hen a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  In considering a motion for default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability.  *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citation omitted); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.").  However, the entry of "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."  *Ryan*, 253 F.3d at 780 (citations omitted).  The Court "must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought."  *Id*.; 10A Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure Civil* § 2688.1 (4th ed. 2019) ("Liability is not deemed established simply because of the default. . . [and] the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

The Fourth Circuit has repeatedly expressed a "strong policy that cases be decided on the merits."  *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993); *Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) ("We have repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits.").  However, default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party."  *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

Still, "acceptance of [the] undisputed facts does not necessarily entitle [the non-defaulting party] to the relief sought." *Ryan*, 253 F.3d at 780–81. If the plaintiff establishes liability, the Court then turns to the determination of damages. *CGI Finance, Inc. v. Johnson*, No. ELH-12-1895, 2013 WL 1192353, at *1 (D. Md. Mar. 21, 2013). In determining damages, the Court cannot accept Plaintiffs' factual allegations as true and must make an independent determination. *See id.; see also Lawbaugh*, 359 F. Supp. 2d at 422. Rule 54(c) of the Federal Rules of Civil Procedure limits the type and amount of damages that may be entered as a result of a party's default, stating that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *Diaz v. Mi Mariachi Latin Restaurant Inc*., No. GJH-18-636, 2019 WL 528185, at *2 (D. Md. Feb. 11, 2019) (quoting *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000)) ("In entering default judgment, a court cannot, therefore, award additional damages 'because the defendant could not reasonably have expected that his damages would exceed' the amount pled in the complaint."). While the Court may conduct an evidentiary hearing to determine damages, it is not required to do so "if the record supports the damages requested." *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (citation omitted). The Court may rely instead on affidavits or documentary evidence of record to determine the appropriate sum. *See, e.g., id.* (citing cases in which damages were awarded after a default judgment and without a hearing, based on affidavits, printouts, invoices, or other documentary evidence).

## IV. Discussion

### A. Liability

Plaintiffs allege Defendants violated the FLSA, MWHL, and MWPCL. In relevant part, the FLSA requires that employers pay nonexempt employees at least the federal minimum wage

for all hours worked and overtime pay for hours worked beyond forty hours per week. 29 U.S.C. §§ 206, 207; *Darveau v. Detecon, Inc.*, 515 F.3d 334, 337 (4th Cir. 2008) (quoting 29 U.S.C. § 207(a)(1)) (stating that the FLSA established the "general rule that employers must compensate each employee 'at a rate not less than one and one-half times the regular rate' for all overtime hours that an employee works").

"The MWHL is the [Maryland] equivalent of the FLSA." *Jahn v. Tiffin Holdings, Inc.*, Civ. A. No. ELH-18-1782, 2019 WL 587421, at *3 (D. Md. Feb. 13, 2019) (citing *Newell v. Runnels*, 407 Md. 578, 650, 967 A.2d 729 (2009)). Like the FLSA, the MWHL "requires that employers pay the applicable minimum wage" and "that they pay an overtime wage of at least 1.5 times the usual hourly wage for each hour worked in excess of forty hours per week." *McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260, 275–76 (D. Md. 2014) (internal quotation marks and citations omitted); Md. Code Ann., Lab. & Empl. §§ 3-413, 3-415, 3-420. As a result, the requirements of the MWHL "mirror" those of the FLSA. *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012) (internal quotation marks omitted) (quoting *Turner v. Human Genome Sci., Inc.*, 292 F. Supp. 2d 738, 744 (D. Md. 2003)). Accordingly, a plaintiff's MWHL claim "'stands or falls on the success of their claim[s] under the FLSA." *Id.* (alteration in original) (quoting *Turner*, 292 F. Supp. 2d at 744).

Separately, the MWPCL requires an employer to pay all wages due for work that an employee performed. Md. Code Ann., Lab. & Empl. § 3-502. This includes unpaid and overtime wages. *Id.* at § 3-501(c); *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 654 (2014) ("We reaffirm today that both the [M]WHL and the [M]WPCL are vehicles for recovering overtime wages.").

After reviewing Plaintiffs' filings in this matter, I am persuaded that Plaintiffs proved that Defendants violated the FLSA by failing to pay them overtime wages. In support of their Motion, Plaintiffs have each submitted a sworn declaration attesting to the facts of their employment. Decl. of Pl. Digna Osorio de Zavala ("Osorio de Zavala Decl."), ECF No. 14-1, Ex. A; Decl. of Pl. Elsa Juarez ("Juarez Decl."), ECF No. 14-2, Ex. B. Plaintiff Osorio de Zavala avers that she was an employee of Defendants and worked for them as a tortilla maker from April 1, 2014 to April 3, 2017. Osorio de Zavala Decl. ¶ 2. Plaintiff Juarez also asserts that she was an employee of Defendants and worked for them as a tortilla maker from June 21, 2013 to April 3, 2017. Juarez Decl. ¶ 2. During their employment, Plaintiffs state that they each worked on average 60 hours per week and were paid between $7.50 and $8.00 per hour. Osorio de Zavala Decl. ¶¶ 7–8; Juarez Decl. ¶¶ 7–8. Despite working over 40 hours a week, Plaintiffs allege that they were paid their regular hourly rate regardless of whether it was for regular hours or overtime hours. Osorio de Zavala Decl. ¶ 9; Juarez Decl. ¶ 9. Taking these factual allegations as true, I am persuaded that Plaintiffs proved that Defendants failed to pay overtime wages in the amount of one and one-half times the federally set minimum wage. As such, I find that Plaintiffs have proven Defendants violated 29 U.S.C. §§ 206, 207. As the requirements for finding a violation of the MWHL mirror those of the FLSA, I am further convinced that Plaintiffs have proven that Defendants failed to pay them overtime wages in violation of Section 3-413 of the MWHL and Section 3-501 of the MWPCL.

I am also persuaded that Plaintiffs have proven Defendants failed to pay them the legally required minimum wage corresponding with their period of employment, and therefore violated the MWHL and the MWPCL. *See* Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq.*; Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq.* Before January 1, 2015, the Maryland minimum wage was

$7.25 per hour; from January 1, 2015 through June 30, 2015, it was $8.00 per hour; from July 1, 2015 through June 30, 2016, it was $8.25 per hour; and from July 1, 2016 through June 30, 2017, it was $8.75 per hour. Md. Code Ann., Lab. & Empl., § 3-413(c). Despite this, Plaintiff Osorio de Zavala states that Defendants paid her "$7.50 per hour worked from October 1, 2014 to April 30, 2015, and $8.00 per hour worked from May 1, 2015 to April 3, 2017." Osorio de Zavala Decl. ¶ 8. Similarly, Plaintiff Juarez alleges that Defendants paid her "$7.50 per hour worked from October 1, 2014 to September 30, 2015, and $8.00 per hour worked from October 1, 2015 to April 3, 2017." Juarez Decl. ¶ 8. Plaintiffs further assert that Defendants were aware of the legally required minimum wage rates and yet they failed to pay Plaintiffs appropriately. Pls.' Compl. ¶¶ 31–41. Taking these factual allegations as true, I am persuaded that Plaintiffs proved Defendants violated the MWHL and the MWPCL by failing to pay them the appropriate minimum wage rates. *See* Md. Code Ann., Lab. & Empl. §§ 3-415(a), 3-420(a); Md. Code Ann., Lab. & Empl. § 3-502(a).

### B. Damages

#### 1. Unpaid Wages and Overtime

Once liability has been established, the question of damages must be addressed. As previously stated, the Court must make an independent determination as to the amount of damages Plaintiffs may recover. *See Lawbaugh*, 359 F. Supp. 2d at 422. However, the Court is prohibited from awarding damages that are different in type or exceed the amount demanded in the pleadings. *See* Fed. R. Civ. P. 54(c); *Diaz*, 2019 WL 528185, at *2. As with determining liability, the Court may rely upon written statements submitted along with a motion for default judgment when calculating damages. *See, e.g.*, *Diaz*, 2019 WL 528185, at *3 (relying upon facts included in a sworn written statement to calculate wages owed). In fact,

> [A]n employee's statement under oath "as to his recollection of the hours he
> worked and the pay he received, if considered credible by the trier of fact, is
> sufficient to establish a prima facie case of wages owed," and if the employer
> does not successfully rebut the employee's statement, "[t]he Court may award
> damages based on Plaintiffs' testimony even though the amounts claimed are only
> approximated and not perfectly accurate."

*Calderon Recinos v. JMZ Constr., LLC*, Civ. A. No. DKC 15-0406, 2016 WL 3162820, at *3 (D.

Md. June 7, 2016) (citation omitted).

Along with their affidavits, Plaintiffs have submitted a breakdown of the weeks they

worked and the hours that they worked each week along with calculations for the amount of

damages they are each owed. "Damage Calculations," ECF No. 14-3. The Court notes that

Plaintiffs have estimated that they each worked on average 60 per week. *See* Osorio de Zavala

Decl. ¶ 7; Juarez Decl. ¶ 7. While they did not attest to it in their declarations, Plaintiffs'

Complaint states that they were paid only in cash. Pls.' Compl. ¶ 20. Considering the lack of

evidence to the contrary, I find Plaintiffs' statements as to the number of hours worked each

week and the amount that they were paid to be credible and sufficient to support their claims for

damages. *Diaz*, 2019 WL 528185, at *3. As previously noted, before January 1, 2015, the

Maryland minimum wage was $7.25 per hour; from January 1, 2015 through June 30, 2015, it

was $8.00 per hour; from July 1, 2015 through June 30, 2016, it was $8.25 per hour; and from

July 1, 2016 through June 30, 2017, it was $8.75 per hour. Md. Code Ann., Lab. & Empl., § 3-

413(c). Accordingly, the total amount each Plaintiff is entitled to for the period of their

employment claimed in this proceeding is $74,117.41, calculated as follows:[4]

---

[4] In their Motion, Plaintiffs calculated their damages using Montgomery County minimum wage
rates. Pls.' Mot. 3. However, Plaintiffs failed to cite to any statute or case law supporting their
request. As Defendants were found to violate MWHL, the Court will use Maryland's minimum
wage rates in calculating damages.

| Amount Owed – Regular Wages | | | | |
|---|---|---|---|---|
| **Dates of Employment** | **Number of Weeks Worked** | **Number of Hours Worked Per Week** | **Maryland Minimum Wage Rate** | **Total** |
| Oct. 20, 2014 to Dec. 31, 2014 | 10.43 | 40 | $7.25 | $3,024.70 |
| Jan. 1, 2015 to June 30, 2015 | 25.86 | 40 | $8.00 | $8,275.20 |
| July 1, 2015 to June 30, 2016 | 52.28 | 40 | $8.25 | $17,252.40 |
| July 1, 2016 to Apr. 2, 2017 | 39.43 | 40 | $8.75 | $13,800.50 |
| | | | **Total Amount of Regular Wages:** | **$42,352.80** |

| Amount Owed - Overtime Wages | | | | | |
|---|---|---|---|---|---|
| **Dates of Employment** | **Number of Weeks Worked** | **Number of Overtime Hours Worked Per Week** | **Maryland Minimum Wage Rate** | **Overtime Wage Rate** | **Total** |
| Oct. 20, 2014 to Dec. 31, 2014 | 10.43 | 20 | $7.25 | 1.5 | $2,268.53 |
| Jan. 1, 2015 to June 30, 2015 | 25.86 | 20 | $8.00 | 1.5 | $6,206.40 |
| July 1, 2015 to June 30, 2016 | 52.28 | 20 | $8.25 | 1.5 | $12,939.30 |
| July 1, 2016 to Apr. 2, 2017 | 39.43 | 20 | $8.75 | 1.5 | $10,350.38 |
| | | | | **Total Amount of Overtime Wages:** | **$31,764.61** |

<u>Plaintiff Osorio de Zavala's Wages</u>

Despite being legally required to pay Plaintiffs at least the minimum wage as outlined above, from October 1, 2014 until April 30, 2015, Plaintiff Osorio de Zavala was paid an hourly wage of $7.50 per hour; and from May 1, 2015 to April 3, 2017, she was paid an hourly wage of $8.00 per hour. Osorio de Zavala Decl. ¶ 8. Throughout the duration of Plaintiff Osorio de Zavala's employment, Defendants did not pay overtime wages for the average of 20 hours that she worked each week in excess of a forty-hour workweek. *Id.* at ¶ 9. These facts are substantiated by Plaintiff Osorio de Zavala's sworn statement, ECF No. 14-1, which Defendants have not rebutted. Because of Defendants' failure to pay Plaintiff Osorio de Zavala the required

minimum and overtime wages as alleged in the Complaint,[5] Defendants owe Plaintiff Osorio de Zavala unpaid wages in the amount of $13,517.41, calculated as follows:

| Plaintiff Osorio de Zavala | | | | |
|---|---|---|---|---|
| **Dates of Employment** | **Number of Weeks Worked** | **Number of Hours Worked Per Week** | **Defendants' Wage Rate** | **Total** |
| Oct. 20, 2014 to Apr. 30, 2015 | 28 | 60 | $7.50 | $12,600.00 |
| May 1, 2015 to Apr. 2, 2016 | 100 | 60 | $8.00 | $48,000.00 |
| **Total Amount Paid to Plaintiff to Date:** | | | | $60,600.00 |
| **Total Amount of Wages & Overtime Owed to Plaintiff:** | | | | $74,117.41 |
| **Total Amount of Damages Due to Plaintiff:** | | | | **$13,517.41** |

<u>Plaintiff Juarez's Wages</u>

As was the case with Plaintiff Osorio de Zavala, despite the minimum wage rates in Maryland from October 1, 2014 to September 30, 2015, Defendants paid Plaintiff Juarez $7.50 per hour. Juarez Decl. ¶ 8. Further, from October 1, 2015 to April 3, 2017 Defendants paid Plaintiff Juarez $8.00 per hour. *Id.* Throughout the duration of her employment, Defendants did not pay Plaintiff Juarez overtime wages for the average of 20 hours that she worked each week in excess of a forty-hour workweek. *Id.* at ¶ 9. These facts are substantiated by Plaintiff Juarez's sworn statement, ECF No. 14-2, which Defendants have not rebutted. Because of Defendants' failure to pay Plaintiff Juarez the required minimum and overtime wages as alleged in the Complaint,[6] Defendants owe Plaintiff Juarez unpaid wages in the amount of $14,447.41, calculated as follows:

---

[5] In the Complaint, Plaintiff Osorio de Zavala alleged to have worked from April 1, 2014 to April 3, 2017. Pls.' Compl. ¶ 11. However, in her motion Plaintiff only provided information under oath about the hours she worked from October 20, 2014 through April 2, 2017. *See* Damage Calculations 1-3. Accordingly, only those hours worked between the dates provided were considered.

[6] In the Complaint, Plaintiff Juarez alleged to have worked from June 21, 2013 to April 3, 2017. Pls.' Compl. ¶ 11. However, in her motion Plaintiff only provided information under oath about

| Plaintiff Juarez | | | | |
|---|---|---|---|---|
| Dates of Employment | Number of Weeks Worked | Number of Hours Worked Per Week | Defendants' Wage Rate | Total |
| Oct. 20, 2014 – Sept. 30, 2015 | 59 | 60 | $7.50 | $26,550.00 |
| Oct. 1, 2015 – Apr. 2, 2016 | 69 | 60 | $8.00 | $33,120.00 |
| | | | Total Amount Paid to Plaintiff to Date: | $59,670.00 |
| | | | Total Amount of Wages & Overtime Owed to Plaintiff: | $74,117.41 |
| | | | Total Amount of Damages Due to Plaintiff: | **$14,447.41** |

## 2. Enhanced Damages

In addition to unpaid wages, Plaintiffs request enhanced damages under two statutory provisions. First, Plaintiffs seek liquidated damages under the FLSA. Pls.' Compl. at ¶ 50. Where there is a violation of both the FLSA and the MWHL, "there is a presumption in favor of an award of liquidated damages . . . ." *Diaz*, 2019 WL 528185, at *2 (citing *Rogers v. Sav. First Mortg., LLC*, 362 F. Supp. 2d 624, 637–38 (D. Md. 2005) (citing cases). Absent a showing of good faith and reasonable grounds for believing it paid its employee all wages legally owed, "an employer who fails to pay wages required by the FLSA or the MWHL is liable to the employee for liquidated damages in an amount equal to the unpaid wages." *Id.*; *see also* 29 U.S.C. §§ 216(b), 260; Md. Code Ann., Lab. & Empl., § 3-427(d). The burden rests with the employer to prove that such good faith and reasonable grounds existed. *See Wright v. Carrigg*, 275 F.2d 448, 449 (4th Cir. 1960) (holding that the employer bears the "plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict").

---

the hours she worked from October 20, 2014 through April 2, 2017. *See* Damage Calculations 4-6. Accordingly, only those hours worked between the dates provided were considered.

Plaintiffs also seek treble damages under the MWPCL. Pls.' Compl. ¶ 66. If a violation of the MWPCL is established, "the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs." Md. Code Ann., Lab. & Empl. § 3-507.2(b)(1). An employer can oppose a court's order of this award if it can show that *bona fide* dispute existed. *Id.* "A *bona fide* dispute is 'a legitimate dispute over the validity of the claim or the amount that is owing' such that the employer had a good faith basis for withholding payment." *Diaz*, 2019 WL 528185, at *3 (quoting *Admiral Mortg., Inc. v. Cooper*, 357 Md. 533, 543 (2000)). As is the case with liquidated damages, the burden rests with the employer to prove that such a *bona fide* dispute exists. *Peters*, 439 Md. at 658–59.

Despite Plaintiffs' request, it is well established in this district that employees seeking enhanced damages are "entitled to recover liquidated damages under the FLSA or treble damages under the [MWPCL], but not both." *Quiroz v. Wilhelp Commercial Builders, Inc.*, Civ. A. No. WGC-10-2016, 2011 WL 5826677, at *3 (D. Md. Nov. 17, 2011). It is further "customary in this district to award double damages under the FLSA, but not treble damages under the MWPCL," when a defendant fails to offer any evidence of a *bona fide* dispute, but a plaintiff fails to offer any evidence that he suffered consequential damages from the underpayments. *Villatoro v. CTS & Associates, Inc.*, Civ. A. No. DKC 14-1978, 2016 WL 2348003, at *3 (D. Md. May 4, 2016) (citing *Clancy v. Skyline Grill, LLC*, No. CIV. ELH-12-1598, 2012 WL 5409733, at *8 (D. Md. Nov. 5, 2012)) (listing cases).

While Plaintiffs have requested both types of enhanced damages, I recommend the Court award only liquidated damages. Addressing Plaintiffs' request for liquidated damages first, as discussed above Plaintiffs have shown Defendants violated both the FLSA and the MWHL for failing to pay them overtime wages in the amount of at least one and one-half times the

minimum hourly rate.  Plaintiffs further proved that Defendants failed to pay them minimum

wage rates in accordance with Maryland law.  As Defendants have not rebutted these findings by

showing proof that they acted in good faith and had reasonable grounds for believing they paid

Plaintiffs all wages legally owed, the Court may award Plaintiffs liquidated damages in this case.

*See Diaz*, 2019 WL 528185, at *2.

Regarding Plaintiffs' request for treble damages, Defendants failed to show that there

was any bona fide dispute over Plaintiffs' pay that explains their failure to pay all wages

Plaintiffs are legally owed.  In their Complaint, Plaintiffs alleged that they "have had difficulty

maintaining a minimum living standard" because of Defendants' failure to pay minimum and

overtime wages.  Pls.' Compl. ¶ 42.  Plaintiffs further alleged that "[a]t various points, they have

been unable to purchase adequate food, housing, utilities, and other basic necessities."  *Id.*

However, Plaintiffs failed to attest to the consequential damages they suffered in the sworn

statements included with their instant Motion.  *See, e.g.*, *Diaz*, 2019 WL 528185 at *4 (awarding

plaintiff treble damages where the plaintiff "asserts in his supporting declaration that he was

forced to take on debt to afford basic expenses because [d]efendants did not pay him minimum

wage or overtime wages").  Plaintiffs also did not provide any other details or evidence such as

receipts or bank statements to support this claim.  While the undersigned is sympathetic to the

difficulties Plaintiffs faced as a result of Defendants' actions, absent a sworn statement attesting

to these facts or additional evidence to support their assertions, I do not find Plaintiffs have

shown that they in fact suffered consequential damages from the underpayments.  *See Falaiye v.*

*CCA Academic Resources, LLC*, Civ. A. No. PX-16-2887, 2017 WL 4098740, at *6 (D. Md.

Sept. 14, 2017) (awarding plaintiff liquidated damages only as plaintiff "provided no evidence of

any consequential damages sustained because of [defendant's] violations").  Accordingly, I

recommend that multiplying Plaintiffs' damages by two (2) times would be appropriate, resulting in an award of $27,034.82 in enhanced damages to Plaintiff Osorio de Zavala and $28,894.82 in enhanced damages to Plaintiff Juarez.

### C. Attorney's Fees

Plaintiffs seek to recover reasonable attorneys' fees incurred in the course of pursuing this matter. Pls.' Compl. ¶¶ 50, 58, 66; Pls.' Mot. 5–6. "Such relief is proper under both the FLSA, 29 U.S.C. § 216(b) and the MWHL, Md. Code Ann., Lab. & Empl. § 3-427(d)." *Diaz*, 2019 WL 528185, at *4. Since reasonableness is the touchstone for the award of fees, the party seeking the award bears the burden of proof and "must provide 'detailed records' that specify 'the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged.'" *Bel Air Plaza Ltd. P'ship v. Ross Dress for Less, Inc.*, Civ. No. CCB-14-2533, 2016 WL 3440191, at *1 (D. Md. Jun. 23, 2016) (citing *Rauch v. McCall*, 134 Md. App. 624, 639 (2000) [citation omitted]); *see also*, *Monge*, 751 F. Supp. 2d at 800 (citations omitted) ("The plaintiff 'must show that the number of hours for which he seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary.'"); *see, e.g.*, *Diaz*, 2019 WL 528185, at *4 (noting plaintiff submitted a detailed declaration by his attorney, an "invoice specifying the hourly billing," and a copy of the retainer agreement in support of his request for attorneys' fees and finding the "well-documented attorney's fees" to be reasonable). However, the exact amount of fees ultimately awarded is within the "sound discretion" of the court. *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984).

In calculating an award of attorney's fees, courts begin with the lodestar calculation. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). The lodestar figure equals the number of

reasonable hours expended by counsel multiplied by a reasonable hourly rate, which the Court

determines by examining the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*See id*. at 243–44 (internal quotation marks omitted) (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d

216, 226 n.28 (4th Cir. 1978) (adopting the factors specified by *Johnson v. Ga. Highway*

*Express, Inc.*, 488 F.2d 714 (5th Cir. 1974))).  When a claim for attorney's fees is filed in the

federal court in Maryland, there is an extra layer of complexity arising from the Court's adoption

of its Guidelines as enumerated in Appendix B of the Local Rules.  The Guidelines address the

format for filing the fee request, provide direction regarding what is compensable and non-

compensable time, and list a presumptive range of reasonable hourly rates.  *Gonzales v. Caron*,

Civ. A. No. CBD-10-2188, 2001 WL 3886979, at *2 (D. Md. Sept. 2, 2011) ("[G]enerally this

Court presumes that a rate is reasonable if it falls within these ranges.").

Plaintiffs state that the total amount of attorneys' fees incurred came to $8,642.50.  Pls.'

Mot. 5.  In support of this, Plaintiffs' counsel each submitted brief affidavits stating the number

of hours expended upon each area of litigation, their individual years of experience practicing

law, and the various costs and fees incurred.  Aff. for Att'y's Fees & Costs – Justin Zelikovitz

("Zelikovitz Aff.") ECF No. 14-4; Aff. for Att'y's Fees & Costs – Jonathan Tucker ("Tucker

Aff."), ECF No. 14-4.  "Calculating attorneys' fees is indeed a difficult task for a court, requiring

the judge to second guess, based on imperfect information, the time expended by the attorneys."

*Kabore v. Anchor Staffing, Inc.*, Civ. No. L-10-3204, 2012 WL 5077636, at \*1 (D. Md. Oct. 17, 2012).  Despite being given the opportunity, Plaintiffs' counsel elected not to supplement their request with additional details, including time logs outlining what tasks were completed during the hours expended.  Further, Plaintiffs have not addressed any of the *Robinson* factors directly and failed to provide sufficient information by which the Court could independently apply most of these factors.  Accordingly, the undersigned is left to determine the reasonability of the fees incurred with insufficient information.  *See cf. Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 349–50 (D. Md. 2012) (finding plaintiffs' submission of an attorney's affidavit and "seven pages of time records for [plaintiffs'] attorneys' work on the case" to "provide the details necessary to justify an attorney's fee award").  Considering this, it is my recommendation that the Court deny Plaintiffs' request for attorneys' fees without prejudice to submit a renewed request with additional supplemental information by which the Court could determine whether the fees incurred were reasonable.

In the alternative, if the Court would prefer to decide Plaintiffs' request on the information provided, I find certain *Robinson* factors offer more guidance for determining reasonableness in this situation than others.  Beginning with the hourly rates charged, "the customary fee for like work" and "the experience, reputation and ability of the attorney" are instructive.  *Robinson,* 560 F.3d at 243–44.  Plaintiffs seek to recover hourly rates of $300 for Justin Zelikovitz's work, $275 for Jonathan Tucker's work, and $125 for work completed by support staff.  Pls.' Mot. 5.  The Guidelines provide, in relevant part, that "[l]awyers admitted to the bar for nine (9) to fourteen (14) years" earn hourly rates ranging between $225 to $350.  Loc. R., App. B (D. Md. July 1, 2016).  Accordingly, Justin Zelikovitz's hourly rate for an attorney with 10 years of experience, and Jonathan Tucker's hourly rate for an attorney with 9 years of

experience, are within the range prescribed.  Pls.' Mot. 5.  The hourly rate billed by

"Paralegals/Support" at any point during this case is also within the range of rates listed in the

Guidelines.  *See* Loc. R., App. B(3)(f) (listing "paralegals and law clerks" as earning between

$95 and $150).  Therefore, I recommend that the Court find the hourly rates charged are

presumptively reasonable.  *Gonzales*, 2001 WL 3886979, at *2.

In determining whether the number of hours expended was reasonable, the following

*Robinson* factors were instructive even in the absence of additional information from Plaintiffs: [7]

"(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the

skill required to properly perform the legal services rendered; . . . (8) the amount in controversy

and the results obtained; . . . ."  *Robinson,* 560 F.3d at 243–44.  The amount of "time and labor

expended" by counsel on a particular case is an essential starting point for assessing the

---

[7] Absent additional information, the Court is left to extrapolate nearly half of the *Robinson* factors from generalities. These factors are:

> (4) the attorney's opportunity costs in pressing the instant litigation; . . . (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; . . . (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client . . . .

*Robinson,* 560 F.3d at 243–44.  In this case, there does not appear to have been any outrageous circumstances that increased Plaintiffs' counsel opportunity costs or heightened their expectations as to the outcome of the case more than would be otherwise expected for a wage and hour case.  Further, there do not appear to have been any unusual time limitations imposed by either Plaintiffs or the circumstances.  Additionally, wage and hour cases generally result in small awards in damages, making them less desirable within the legal community.  This is partially why the FLSA and equivalent state statutes allow for fee shifting for a prevailing party. Finally, there is no indication that Plaintiffs' counsel has represented either Plaintiff prior to this proceeding or have an agreement to represent them in any further capacity.  In sum, absent additional information I find these factors provided little guidance in determining the reasonability.

reasonableness of the total amount of fees requested. Plaintiffs' counsel state that they collectively expended 27.2 hours on this case in the following phases of litigation: 16.1 hours on "case development, background investigations, and case administration"; 5.3 hours on "pleadings"; 4.8 hours on "motions practice"; and 1.0 hour on "the fee petition component" of Plaintiffs' Motion. Zelikovitz Aff. ¶ 2; Tucker Aff. ¶ 7. Additionally, "support staff" expended 7.0 hours on "case development, background investigations, and case administration." Zelikovitz Aff. ¶ 3. A review of the filings in this matter reveals that the case required some investigation into Plaintiffs' employment situation and necessitated counsel do research, draft a Complaint, and calculate estimated damages. This case also involved several motions, including a Motion to Reissue Summons, a Motion for Default Entry, and the instant Motion seeking default judgment. I find all the filings to be relatively brief and present no indication that the case raised any novel or difficult issues for counsel. While a lack of documentary evidence in a case can present difficulties for any litigation, such situations are not uncommon for wage and hour cases. *See, e.g.*, *Falaiye*, 2017 WL 4098740 *1 (granting default judgment in a wage and hour case where plaintiff's employer "kept no records pertaining to [the plaintiff's] employment"). Further, as Defendants defaulted, Plaintiffs were presented with no opposition to their presentation of the facts of the situation. I also find the skill required to properly perform the legal services rendered does not appear to be more than what would be expected of any attorney familiar with wage and hour claims. In light of these factors, the number of hours expended on this case appear to be reasonable. *See Monge*, 751 F. Supp. 2d at 800 (finding 20.8 hours expended upon "a [c]omplaint, drafted as a class action although no steps were taken towards certification; two [m]otions for [e]ntry of [d]efault; and two [m]otions for [d]efault [j]udgment" to be "a reasonable amount of time").

In addition to the *Robinson* factors, courts have determined that time spent on certain tasks is non-compensable as attorneys' fees regardless of their reasonableness. For example, case law makes clear that "clerical work" should not be compensated as an award for attorney's fees. *Kabore*, 2012 WL 5077636, at *4 (quoting *Hyatt v. Barnhart*, 315 F.3d 239 (4th Cir. 2002)) ("Fees for work performed by paralegals are generally recoverable, but only 'to the extent they reflect tasks traditionally performed by an attorney and for which the attorney would customarily charge the client.'"); *In re Beenblossom*, No. BK10-40335-TJM, 2010 WL 2710417, at *4 (Bankr. D. Neb. July 7, 2010) (concluding that activities such as "[f]ile setup, scanning, setting up appointments" are clerical and, therefore, not billable). Here, Plaintiff seeks to recover hours spent by both support staff and attorneys completing tasks falling under the category of "case development, background investigations, and case administration." Zelikovitz Aff. ¶¶ 2–3; Tucker Aff. ¶ 7. Plaintiffs provide no explanation or argument that all of these were "tasks traditionally performed by an attorney" or that they are not clerical or administrative in nature. *See, e.g.*, *Kabore*, 2012 WL 5077636, at *4 (declining to award fees for hours spent "prepar[ing] for mailing to 425 opt-ins" as it was "not immediately apparent what this 'preparation' entailed").

Additionally, absent additional details, the format of Plaintiffs' request for attorneys' fees is akin to block billing practices, which can leave a court without the ability to determine which hours are compensable and which are not. *See Maryland Elec. Indus. Health Fund v. MESCO, Inc.*, Civ. A. No. ELH-12-505, 2014 WL 4660813, at *6 (D. Md. Sept. 16, 2014) ("In general, courts have permitted parties seeking attorneys' fees to use block billing, at least where the entries are reasonably descriptive and the tasks all pertain to the case or claims for which attorneys' fees are sought."); *see also Rossum v. Baltimore Cty., Maryland*, No. GJH-14-0115,

2017 WL 4270435, at *3 (D. Md. Sept. 26, 2017) ("Block billing would only be inappropriate if one or more tasks performed by an individual attorney was not recoverable such that the Court could not discern the actual time charged for recoverable tasks."). "When entering a default judgment, the Court may make an award of attorney's fees for a lesser amount than the moving party requested." *Monge*, 751 F. Supp. 2d at 800 (finding an award of $4,160.00 in attorneys' fees to be reasonable despite plaintiff's request for $7,259.20). "Where 'lumping' or other inadequate documentation is present in a fee application, courts may either identify and exclude improperly documented hours or simply reduce the overall fee award 'by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity, and the counsel involved.'" *JP ex rel. Peterson v. Cty. Sch. Bd. of Hanover Cty., Va.*, 641 F. Supp. 2d 499, 520 (E.D. Va. 2009). Therefore, I recommend reducing the number of hours designated for this litigation phase by 10% percent. *See id.* at 519–20 (reducing an overall fee award by 10% where "[t]he lack of specificity in the [plaintiffs'] time records render it impossible to determine the amount of time attributed to non-recoverable activities or the appropriate rate at which the [p]laintiffs may recover for any given activity"). This would result in a reduction of the amount of time compensated for each member of the litigation team by the following: Mr. Zelikovitz (1.15 hours); Mr. Tucker (1.57 hours); and support staff (0.7 hours). This would result in Plaintiffs' total awarded coming to $7,778.25, based upon the following calculations:

| Time Keeper | Hours Billed | Reduced Hours | Hourly Rate | Total Award |
|---|---|---|---|---|
| Justin Zelikovitz | 11.5 | 10.35 | $300 | $3,105.00 |
| Jonathan Tucker | 15.7 | 14.13 | $275 | $3,885.75 |
| Support Staff | 7.0 | 6.3 | $125 | $787.50 |
| | | | **Total** | **$7,778.25** |

Finally, looking to attorneys' fees awards in similar cases presented the most guidance for determining reasonability of the fees awarded given a dearth of information this case. In one

recent wage and hour case, the court awarded $8,140.00 in attorneys' fees for a proceeding that was concluded through a motion for default judgment. *See Diaz*, 2019 WL 528185, at *4. In that case, the attorney represented one plaintiff seeking wages and overtime that he was owed for working as a cleaner in a restaurant over the course of a year. *Id.* at *1. Similar to the instant proceeding, *Diaz* did not present any novel or difficult issues for the attorney and was unopposed by the defendants. *Id.* However, the plaintiff's request for attorney's fees in *Diaz* was supported by supplemental information, including a declaration by the attorneys and invoices with details on hourly billing. *Id.* at *4. In determining the amount requested was reasonable, the court specifically noted that the fees were "well documented." *Id.* In light of the foregoing reasons, if the Court deems it best to make a determination on Plaintiffs' attorneys' fees request relying solely on the information provided, I recommend a total award of $7,778.25.

### D. Costs and Expenses

In addition to attorneys' fees, Plaintiffs requests reimbursement of $400.00 for court costs. Pls.' Mot. 5. Under FLSA, and other similar fee-shifting statutes, "the costs that may be charged to losing defendants include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services.'" *Monge*, 751 F. Supp. 2d at 801 (citing *Lopez v. Lawns 'R' Us*, Civ. No. DKC 07-2979, 2008 WL 2227353, at *7 (D. Md. May 23, 2008)). Generally, the cost to commence a proceeding is charged to clients. The amount requested by Plaintiffs is the general amount charged for filing a complaint in this district. I therefore recommend Plaintiffs be reimbursed that amount.

Plaintiffs also request reimbursement for $300.00 in service expenses. Pls.' Mot. 5. This request is not supported by any invoices or affidavits by process servers. However, this amount

is not unreasonable considering this case required service be completed upon three defendants and involved a "skip trace" search to locate at least one defendant.  *See* Pls.' Mot. to Reissue Summons ¶ 3.  Accordingly, I recommend that Plaintiffs be awarded the full amount of service expenses they incurred.  *See, e.g.*, *Diaz*, 2019 WL 528185, at *4 (granting plaintiffs' request for reimbursement of $270.00 in service expenses).

## V.      Conclusion

As stated above, I hereby **VACATE** my May 14th Order.  Further, and for the foregoing reasons, it is my recommendation that:

1.    The Court **GRANT** Plaintiffs' Motion for Default Judgment (ECF No. 14) against Defendants; and

2.    The Court award Plaintiffs a total of $56,629.64 for Defendants' violations of the FLSA, MWHL and MWPCL to be divided as follows:

   a.   $27,034.82 to Plaintiff Osorio de Zavala (representing two times her unpaid minimum and overtime wages);

   b.   $28,894.82 to Plaintiff Juarez (representing two times her unpaid minimum and overtime wages);

   c.   $700.00 in costs and expenses.

3.    The Court **DENY WITHOUT PREJUDICE** Plaintiffs' request for attorneys' fees with instructions to include additional information as outlined in this Report and Recommendation should they refile their request or, in the alternative, award Plaintiffs a total of $7,778.50 in attorneys' fees.


June 4, 2019                                       _____/s/_____
                                                        Charles B. Day
                                                        United States Magistrate Judge


CBD/clc